## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LAREN SCHUSTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-1128-JTM |
| ) | |
| AQUILA, INC. and HUNTEL ) | |
| ENGINEERING, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

### MEMORANDUM AND ORDER

This matter is before the court on non-party Asplundh Tree's motion for a protective order. (Doc. 77). Specifically, Asplundh objects to a subpoena duces tecum served by plaintiff for tree-trimming records for an extended period of time. For the reasons set forth below, the motion shall be GRANTED.

### Background

Plaintiff was working as a lineman for a subcontractor installing fiberoptic telecommunication cable in Plainville, Kansas when he came into contact with Aquila's overhead power line. The accident occurred while plaintiff was trimming tree branches below Aquila's power line. Highly summarized, plaintiff contends that Aquila's negligence in maintaining its power lines contributed to his injuries. He also alleges that the negligence

of Huntel Engineering, the company that designed and mapped the installation of the fiberoptic line, contributed to his injuries.

### Asplundh Tree's Motion for a Protective Order

Asplundh provides tree trimming services for Aquila and other utilities in Kansas.[1] Because of this history of tree trimming services, plaintiff served a subpoena duces tecum on Asplundh requesting documents related to Asplundh's services in Plainville from January 1990 through September 2005. Asplundh objects to the subpoena and moves for a protective order, arguing that the subpoena, as presently drafted, requests (1) attorney-client privileged communications and work product materials and (2) confidential and proprietary business information. Asplundh also contends that the subpoena is overly broad and unduly burdensome, particularly for a non-party. Specifically, Asplundh contends that the subpoena (1) is not restricted to a reasonable time frame, (2) is not restricted to work performed in the specific location where the accident occurred, and (3) seeks Asplundh's "policies and procedures generally." With respect to a time frame, Asplundh suggests that a one or two year is a more reasonable period for a non-party to gather and provide records.

In response to the motion, plaintiff voluntarily agrees to limit the subpoena to (1) ten rather than fifteen years, (2) a two block area surrounding the location of the accident, and

---

[1] Asplundh provides tree removal and trimming services for utility companies nationwide. Forbes.com reported that Asplundh had 29,317 employees and $2.37 billion in revenue in 2005. www.forbes.com/lists/2006/21/biz_06privates_Asplundh-Tree-Expert_30E6.html.

(3) work performed for Aquila or its predecessor, Utilicorp. Plaintiff explains that he seeks the tree trimming information from Asplundh because Aquila sold its Kansas operations prior to the filing of this lawsuit and Aquila's prior business records are now maintained by a non-party Kansas utility. Although plaintiff has secured weekly operations reports from Aquila, no maps, written requests for work, or tree maintenance permits have been produced.

Asplundh counters that a ten-year time frame is still excessive for a non-party. More importantly, Asplundh argues that "any documentation pertaining to the location, type, and extent of work to be performed" was returned to Aquila "following completion of the work." Asplundh asserts that the only documents it would still have in its possession are "Weekly Operation Reports," copies of which plaintiff has already received from Aquila. Although Asplundh retained the Weekly Operation Reports, they are housed in storage caves in Pennsylvania and would "take hundreds of hours" to identify, gather, and copy the reports.[2]

Based on the record and arguments of counsel, the court agrees that a ten-year period is an unreasonable time frame for Asplundh, a non-party, to search for records. Moreover, plaintiff already possesses the recent Weekly Operation Reports.[3] The court declines to require a non-party to search for documents otherwise available to plaintiff.

In addition to maps and work requests, plaintiff also seeks production of Asplundh's

---

[2] Asplundh's representations concerning the requested documents and the burden of gathering the Weekly Operation Reports are supported by a sworn affidavit from Mel Riley, an Asplundh vice-president.

[3] A copy of a Weekly Operation Report is attached to Asplundh's reply brief. The report was provided by Aquila and utilized as an exhibit for a deposition in this case.

"guidelines, policies and procedures" for tree trimming.[4] Asplundh's request for a protective order concerning its guidelines, policies and procedures shall be sustained. In essence, plaintiff is attempting to utilize the subpoena process as a means of compelling a non-party to provide expertise without compensation concerning tree-trimming standards. The court will not require a non-party to participate in the case as an involuntary, uncompensated expert.

**IT IS THEREFORE ORDERED** that Asplundh's motion for a protective order **(Doc. 77)** is **GRANTED.  Asplundh is excused from complying with the subpoena duces tecum.**

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 28th day of April 2008.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge

---

[4] Plaintiff has a copy of ***Aquila's*** policies, procedures, and standards for line maintenance and tree trimming.

-4-